United States District Court
Southern District of Texas
**ENTERED**
September 02, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Yvonne M.,[1] | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-25-2516 |
| | § | |
| Frank J. Bisignano,[2] | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| *Defendant*. | § | |

**MEMORANDUM AND ORDER**

Yvonne M. appeals the Social Security Administration Commissioner's final decision denying her application for Social Security benefits. ECF No. 1. Pending before the court are Plaintiff's Brief, ECF No. 10; and the Commissioner's Cross Motion for Summary Judgment, ECF No. 12. The parties consented to the jurisdiction of the undersigned magistrate judge for all purposes, including entry of final judgment. ECF Nos. 4, 7. The Commissioner's Cross Motion for Summary Judgment is **GRANTED**. The Commissioner's final decision is **AFFIRMED**.

***1. Procedural Posture***

On or around November 16, 2021, Yvonne applied for disability insurance benefits (DIB), under Title II of the Social Security Act, and supplemental social security income benefits, under Title XVI of the Social Security Act. Tr. 198–202. Yvonne

---

[1] In light of guidance received from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which states that there are significant privacy concerns in social security cases, the court refers to the Plaintiff only by their first name or by their first name and last initial.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Frank J. Bisignano is substituted as the defendant in this suit.

alleged that her disability began on April 19, 2021, due to hypothyroidism, high blood pressure, high cholesterol, depression, arthritis, knee injury, shoulder injury, asthma, seizure, and chronic migraines. Tr. 198, 200.

The SSA denied both of Yvonne's applications at the initial level on July 20, 2022, and upon reconsideration on October 31, 2023. Tr. 116–20, 121–25, 135–38, 139–42. Administrative Law Judge (ALJ) William Howard held a hearing via telephone on April 5, 2024. Tr. 42–80. Yvonne's counsel was present at the hearing. Tr. 42, 44. Yvonne testified about her medical conditions and prior work history. Tr. 47–69.

As to her medical conditions, Yvonne testified that she had high blood pressure, bronchial asthma, osteoarthritis, carpal tunnel, "bowel syndrome," "gastro problems," some hearing loss, depression, anxiety, and bipolar disorder. Tr. 48–59. Yvonne stated that she was diagnosed with high blood pressure more than twenty years prior, but in recent years, it was "extremely high," even with prescription medication. Tr. 48–49. Yvonne testified that she had to routinely monitor her blood pressure with checks every three days. Tr. 48. Yvonne explained that her high blood pressure caused fatigue, restlessness, dehydration, and increased urine production. Tr. 49–50. Yvonne also testified that she had "heart issues," and "one of [her] heart valves [was] allowing excess blood to flow back into [her] heart." Tr. 59.

Yvonne testified that she suffered from bronchial asthma. Tr. 51. She testified that it was hard for her to breathe when she went outside. *Id.* Yvonne stated that she used several asthma inhalers and breathing devices "as needed two weeks, two to three times a day." Tr. 52. Yvonne stated that even with her inhaler, it took her up to an hour to catch her breath, and she had to sit down and "lean over to the side" to do so. *Id.*

Yvonne testified that she had pain in her hands, arms, shoulders, hips, and knees as a result of two conditions—carpal tunnel and osteoarthritis. Tr. 48. Yvonne stated that she was diagnosed with carpal tunnel about fourteen years ago. Tr. 53. She explained that the condition caused tingling, numbness, and “extreme pain” in her hands and arm, as well as “locking” of her hands and wrist. Tr. 52 She testified that the pain subsided to some degree from the use of wrist braces and pain medication. Tr. 54. Yvonne testified that she also experienced osteoarthritis pain in her shoulders, hips, and knees, which limited her ability to engage in physical activity. Tr. 48, 55.

As to her mental limitations, Yvonne testified that she had depression, anxiety, panic attacks, and bipolar disorder. Tr. 48, 56. Yvonne testified that she was diagnosed with bipolar disorder thirty years ago. Tr. 56. Yvonne said that she experienced daily mood swings, sometimes two to three times per day. Tr. 57. She stated that her bipolar disorder made her “have problems dealing with people, dealing with things,” and it made her want to isolate from others. Tr. 56–57. She stated that it also affected her sleep. Tr. 56. Yvonne took prescription medications for depression and to sleep, but she stated that they only helped her “a little bit.” Tr. 58, 63. Yvonne stated that her mental health conditions caused her to have difficulty concentrating. Tr. 57. She testified that during the hearing, her “mind [was] totally lost, blanking.” Tr. 59. Yvonne also testified that “[w]hen [she was] down and depressed,” she had some level of crack cocaine dependency Tr. 64.

As to her physical limitations, Yvonne stated that her carpal tunnel made it difficult to reach for, pick up, and hold various items, including her cell phone, remotes, and drinking glasses. Tr. 53–54. Yvonne testified that her osteoarthritis pain was exacerbated by physical activity. Tr. 55. She stated that after less than a minute of walking or standing, she experienced severe knee

pain. Tr. 55–56. She testified that she was able to sit on soft surfaces, like her couch, for about ten to fifteen minutes without experiencing pain, but that she could only sit on a hard surface for about one to two minutes. Tr. 56. Additionally, Yvonne testified that she could only stand in one spot for about a minute before she would get tired and need to sit or walk around. Tr. 50. She stated that because of her asthma, she had to catch her breath if she walked around for more than two to three minutes, and she could only walk up five stairs before running out of breath. Tr. 50–51. To ease her physical pain, Yvonne took a prescription nerve pain medication and Tylenol PM, as needed. Tr. 68–69. She did not use any physical assistive devices, like a walker or cane. Tr. 69.

Initially, when asked how much weight she would be able to carry without strain, Yvonne stated, "at least probably five pounds, five to ten pounds." Tr. 50. She then testified, however, that she was not able to hold her cell phone without being bothered by her arms and hands, and she cannot carry a gallon of milk for more than thirty seconds. *Id.* She clarified that she was only capable of holding "much less than five to ten pounds." *Id.* Yvonne testified that she could only hold her arms up "for less than a minute," and she could not raise her arms without experiencing "severe pain" in her shoulders. Tr. 55.

As to her home life, Yvonne testified that she lived with her sister. Tr. 66. Yvonne stated that she tried to help keep the house clean. *Id.* Specifically, she said that she would "pick up," vacuum, wipe down furniture, load the dishwasher from a seated position, do her own laundry, and "put food in the house." *Id.* She testified that she must take breaks between completing those tasks. *Id.* Yvonne stated that she did not drive. Tr. 67. While she said that she was able to take the bus to attend to nearby doctor's appointments, she stated that she typically "can't deal with being on the bus . . . because it goes hurting my body being crowded."

Tr. 68. Yvonne testified that she had a difficult time getting along with others in her family, including her kids. Tr. 69. However, Yvonne stated that she called and talked to her friends to cope with her depression. Tr. 58. Yvonne did not read books or newspapers. Tr. 57–58. She would sometimes watch about an hour of television before losing focus. Tr. 58.

Yvonne testified about her prior work history. Tr. 59–62. She stated that she last worked in 2024 as an elementary school custodian. Tr. 59. She testified that she also worked as a custodian at a hospital for a few months of 2021. Tr. 62–63. For roughly four months in 2022, Yvonne worked as a dietary aid at a nursing home. Tr. 59–60. Yvonne testified that at various points in time in 2013, 2015 to 2020, and 2022, she worked in "home healthcare." Tr. 60–62. She stated that in her latest home healthcare role in early 2022, she "just sat with an elderly patient" and "vacuum[ed] her living room and just help[ed] her . . . ." Tr. 60. Between 2018 and mid-2020, Yvonne cared for her uncle, which included washing his clothes and ensuring that he ate and took his medications. Tr. 62, 72. Additionally, on an as-needed basis in 2010, 2011, and 2016, Yvonne worked as a babysitter. Tr. 61–62.

A Vocational Expert (VE) testified about Yvonne's prior work. Tr. 70. The VE classified the majority of Yvonne's past work in home healthcare as a "housekeeper." *Id.* The VE explained that Yvonne's description of her work included more housekeeping duties than direct patient care. *Id.* The VE testified that the occupation of housekeeper, as classified by the Dictionary of Occupational Titles (DOT), is unskilled (SVP 2) and requires light exertion. *Id.*

The ALJ asked Yvonne additional questions about her position as an elementary school custodian. Tr. 71. Yvonne stated that in that role, she had to move tables and chairs, weighing upwards of twenty pounds, with the assistance of another person.

*Id.* She stated that she was required to take the trash out and mop the floors. *Id.* Based on that additional testimony, the VE classified Yvonne's work as the DOT occupation of "school custodian." Tr. 72. The school custodian occupation as unskilled (SVP 2) and requiring medium exertion. *Id.* The VE noted, however, that Yvonne performed the role at the light exertional level. *Id.*

The ALJ posed a series of hypothetical questions to the VE. He asked the VE first to assume a person of the same age, education, and past work experience as Yvonne, who is limited to the light exertional level, except that she could never crawl or climb ropes, ladders, or scaffolds; could only occasionally reach overhead; could frequently, but not constantly, finger and handle; and could never work in an environment with concentrated exposure to pulmonary irritants. Tr. 74. The ALJ instructed the VE to also assume that the hypothetical claimant has the mental ability to understand, remember, and carry out detailed and simple tasks, but not complex tasks, and she should never be required to work at an assembly-line pace. *Id.* The VE testified that a hypothetical claimant with those limitations would be able to perform Yvonne's past work as a housekeeper and as a school custodian at the light exertional level—as Yvonne had actually performed those roles. *Id.* The ALJ then added to the hypothetical that the claimant requires two-to-three unscheduled breaks a day, in addition to usual breaks lasting twenty to thirty minutes each. Tr. 75. The VE testified that, with those additional restrictions, the hypothetical claimant would not be able to maintain employment. *Id.* Yvonne's attorney declined cross-examination of the VE, and the hearing concluded. *Id.*

The ALJ issued his decision on May 10, 2024, finding that Yvonne was not disabled from April 19, 2021, through the date of the decision. Tr. 26–37. Yvonne requested review of the ALJ's decision, which the Appeals Council denied on October 7, 2024.

Tr. 13. Yvonne timely filed a complaint and an application to proceed *in forma pauperis* in federal court on May 2, 2025. *See Yvonne M. v. Dudek*, No. 25-mc-0813, ECF No. 1 (S.D. Tex. May 2, 2025).

***2. Legal Standards***

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program and provides supplemental income to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. §§ 423, 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

This court's review of the ALJ's disability determination is "highly deferential." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). The court "ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Id.* "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812,

817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision, but it may not reweigh the evidence or substitute its judgment. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### *3. Analysis*

#### *A. Step One*

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). A person engaged in substantial gainful activity is not disabled, regardless of her medical condition, age, education, or work experience. *Id.*

The ALJ found that Yvonne engaged in substantial gainful activity during January 2023 and February 2023. Tr. 28. The record showed that Yvonne's income exceeded the threshold for substantial gainful activity during those two months. Tr. 29. Other than those two months, however, the ALJ found that Yvonne did not engage in substantial gainful activity since the alleged onset date. *Id.* The ALJ also determined that there had been at least one continuous twelve-month period since the alleged onset date in which Yvonne did not engage in substantial gainful activity. *Id.* The ALJ cabined his remaining findings to those period(s). *Id.* Yvonne does not dispute the ALJ's step-one finding.

***B. Step Two***

At step two, the ALJ determines whether any of the claimant's impairments, or any combination thereof, is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii) (citing 20 C.F.R. §§ 404.1509), 416.920(a)(4)(ii) (citing 20 C.F.R. § 416.909). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is "not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience." *Keel*, 986 F.3d at 555 (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Yvonne has the following medically determinable severe impairments:

> carpal tunnel syndrome, neuropathy, asthma, osteoarthritis of the shoulder, cocaine use disorder, marijuana abuse disorder, affective mood disorder, post-traumatic stress disorder (PTSD), generalized anxiety disorder, mild pulmonary emphysema, hypertensive heart disease with moderate aortic valve stenosis and impaired left ventricular relaxation, left ventricular hypertrophy, and obesity[.]

Tr. 29. The ALJ's step-two findings are not in dispute.

***C. Step Three***

At step three, the ALJ determines if any of the claimant's severe impairment meets or equals a listed impairment (Listing) in Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Listings describe impairments that the SSA considers "severe enough to prevent an individual from doing

any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. § 404.1525(a). The claimant will be found disabled if the claimant's impairments meet or equal all of the specified criteria of a Listing. 20 C.F.R. § 404.1520(d); *Whitehead*, 820 F.3d at 781. The claimant has the burden of establishing that their impairments match the Listing. *Whitehead*, 820 F.3d at 781.

The ALJ considered all of the Listing Sections, including 1.18 (abnormality of a major joint(s) in any extremity), 3.02 (chronic respiratory disorders), 3.03 (asthma), 4.04 (ischemic heart disease), and 11.14 (peripheral neuropathy). Tr. 30. He concluded that Yvonne did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Listing Sections. *Id.* Yvonne does not dispute the ALJ's step-three findings.

***D. Residual Functional Capacity***

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e) (citing 20 C.F.R. § 404.1545), 416.920(e) (citing 20 C.F.R. § 416.945). The RFC is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)). The RFC determination is based on "the medical evidence in the record, including the testimony of physicians and the claimant's medical records." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). "An 'ALJ is responsible for determining an applicant's residual functional capacity.'" *Id.* (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *see also* 20 C.F.R. §§ 404.1546(c), 416.946(c).

The ALJ determined that Yvonne had the RFC to perform light work, except that she is limited to:

> no crawling or climbing ropes, ladders or scaffolding. No working in environments with concentrated exposure to pulmonary irritants. No more than

> occasional reaching overhead. The claimant can frequently but not constantly finger and handle. Mentally, the claimant can understand, remember and carry out detailed and simple tasks but not complex tasks. To minimize stress, the claimant should never be required to work at an assembly line pace (also called a forced pace).

Tr. 32. In making that determination, the ALJ considered the entire record, including Yvonne's hearing testimony and statements she made to medical providers, the medical records, and the various statements and opinions of Yvonne's medical providers. Tr. 32–35.

As for Yvonne's statements at the hearing and to medical providers, the ALJ's summary of those statements is consistent with Yvonne's hearing testimony, which the court summarized above. Essentially, Yvonne maintains that she is extremely limited physically and mentally. Tr. 33. Yvonne has a history of asthma, arthritis, heart issues, high blood pressure, hearing loss, bipolar disorder, depression, and use of crack cocaine. *Id.* Physically, she is limited in her ability to complete household chores, and she has to keep changing positions to be comfortable. *Id.* She takes a variety of medications, both prescription and over the counter, to treat her physical and mental health conditions. *Id.* She has trouble concentrating. *Id.* She watches some television, and she occasionally talks to her friends on the phone. *Id.* She cannot cope with daily tasks. *Id.* She also has problems dealing with people. *Id.*

The ALJ found that, while Yvonne's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with or supported by the medical evidence and other evidence in the record. Tr. 33. The court turns next to an analysis of that finding.

As to Yvonne's physical limitations, the ALJ stated that the record showed that Yvonne has moderate osteoarthritis of the shoulder. Tr. 33 (citing Tr. 513–14). He noted that the record also showed that, throughout 2022, Yvonne had normal physical exams with full range of motion in the shoulder and normal bilateral upper extremity strength. *Id.* (citing normal physical exam in February 2022, at Tr. 452; normal physical exams except for mild hypertension in August 2022 and September 2022, at Tr. 494, 498). The ALJ noted that Yvonne's records showed that she had no synovitis in the lower extremities, and that she had full range of motion in her hips. *Id.* (citing Tr. 521). X-rays of both of Yvonne's knees showed mild osteoarthritis. *Id.* (citing Tr. 524). Additional imaging reflected mild degenerative discs in Yvonne's spine and mild degenerative changes in her hips. Tr. 33–34 (citing Tr. 417, 527). The ALJ also noted that Yvonne's medical records showed diffuse joint pain, which, as the ALJ stated and Yvonne's medical provider noted, was consistent with osteoarthritis, not rheumatoid arthritis. Tr. 34 (citing Tr. 559, 618).

The ALJ stated that the record showed that Yvonne has high blood pressure and mild aortic regurgitation. Tr. 33 (citing Tr. 394, 571–620). In September 2023, Yvonne was prescribed three medications to treat those conditions. *Id.* (citing Tr. 615). The record also reflected that Yvonne had mild upper lobe predominate pulmonary emphysema in March 2024 with pulmonary modules, but her lungs were otherwise unremarkable with normal airways. *Id.* (citing Tr. 628).

The ALJ reviewed the opinions of the internal medicine consultative examiner, Dr. Daryl Daniel, and the psychological consultative examiner, Dr. Cecilia Lonnecker. Tr. 34. Dr. Daniel examined Yvonne on September 19, 2023. *Id.* Yvonne's musculoskeletal examination showed no muscle atrophy, swelling, or effusion, and an adequate sensory examination of her upper and

lower extremities. *Id.* The ALJ noted that the results of the strength tests performed by Dr. Daniel were consistent with mild muscle weakness. *Id.* Yvonne's straight leg raises were positive. *Id.* Dr. Daniel diagnosed Yvonne with hypothyroidism (which the ALJ noted was described, but not confirmed), high blood pressure, hyperlipidemia, polyarthritis, bilateral carpal tunnel syndrome, asthma, history of seizures (which the ALJ noted was resolved), migraine headaches, obesity, irritable bowel syndrome, GERD (which the ALJ noted was "reported"), and colon polyps (which the ALJ also noted was "reported"). *Id.* Dr. Daniel concluded that Yvonne had "limited overall functional capacity, secondary to multiple musculoskeletal conditions . . . ." *Id.* The ALJ did not find Dr. Daniel's opinion to be persuasive, "as it was not supported in maximum functioning terms and it was vague and was not consistent with the findings in the record as a whole." *Id.* (citing Tr. 521, which reports Yvonne's shoulder "strength intact" and a negative straight leg raising test).

Dr. Lonnecker examined Yvonne on September 26, 2023. Tr. 34. Dr. Lonnecker noted that Yvonne did not exhibit any mobility problems. *Id.* As to Yvonne's psychological conditions, Dr. Lonnecker observed that Yvonne exhibited limited eye contact, clear speech—which tended to ramble, but was at a normal rate, tone, and volume—coherent thought processes, a cooperative attitude, adequate effort, and sustained attention without distractibility. *Id.* Yvonne reported feeling depressed, and Dr. Lonnecker noted that Yvonne had a mildly dysphoric and frustrated attitude. *Id.* Yvonne also reported that "she continues to use substances," including cannabis and cocaine, "which may negatively impact mood state." *Id.* The ALJ stated, "Dr. Lonnecker diagnosed the claimant with other specified depressive disorder but stated that the claimant's reported symptoms were subthreshold of the diagnostic criteria of major depressive

disorder." *Id.* The ALJ also noted that Dr. Lonnecker found that Yvonne was able to concentrate on, understand, recall, and carry out instructions, and that she exhibited average social reasoning. *Id.* Dr. Lonnecker stated that Yvonne "had assumed a disabled role and had no interest in working," and as a result, she might be moderately impaired in her "ability to persist and complete work-related activity, cope with normal workplace pressures, and maintain effective social interactions . . . ." *Id.* The ALJ found that Dr. Lonnecker's opinion as to Yvonne's mental function was persuasive, as it was supported by Dr. Lonnecker's evaluation and "offered insights that were consistent with the record as a whole." *Id.*

The ALJ reviewed opinions related to Yvonne's physical function. Two different state agency medical consultants (SAMCs) reviewed Yvonne's medical records. Tr. 35. At the initial level, Dr. Folarin "cited insufficient evidence to assess [Yvonne's] physical functioning." *Id.* (citing Tr. 78–83, 85–90). On reconsideration, Dr. Smith evaluated the severity of Yvonne's physical impairments. *Id.* Dr. Smith determined that Yvonne could engage in a "light level of exertion," limited to "no climbing of ropes, ladders, or scaffolds and all other postural maneuvers as occasional." *Id.* (citing Tr. 92–100, 102–10). The ALJ found that Dr. Smith's opinion was only partially persuasive because while it was internally supported by references to the record, it "was not consistent with the record as a whole." *Id.* The ALJ explained that he agreed that Yvonne was limited to a light level of exertion, but that the record supported additional non-exertional limits in Yvonne's RFC. *Id.* The ALJ also noted that both he and Dr. Smith concluded that the record did not support the imposition of additional physical limitations, beyond those incorporated into the RFC. *Id.*

The ALJ also reviewed the opinion of the state agency psychological consultant (SAPC). Tr. 35. The SAPC reviewed Yvonne's medical records and evaluated the severity of Yvonne's mental impairments. The SAPC determined that Yvonne was "maximally able to understand, remember, and carry out detailed but not complex instructions, make basic decisions, attend and concentrate for extended periods, interact with others, accept instructions and respond to changes in a routine work setting." *Id.* The ALJ concluded that the SAPC's opinion was generally persuasive as it was supported by citations to the record. *Id.*

The ALJ then reiterated that his RFC was based on his review of the record and supported by the record. Tr. 35. The ALJ explained that Yvonne's physical impairments support the RFC of light exertion with additional non-exertional limitations. *Id.* He also explained that Yvonne had "mental limitations corresponding to a moderate limitation" in (1) her ability to "concentrate, persist, or maintain pace," and (2) her ability to understand, remember, or apply information. *Id.* The ALJ stated that "as a safeguard to [e]nsure that [Yvonne] does not mentally decompensate in a work setting" due to her moderate mental limitations, he imposed the RFC limitation that precludes Yvonne from working at an assembly line pace. *Id.*

The RFC was determined according to the appropriate legal framework and is supported by substantial evidence. Each of the physical and psychological limitations is supported by the record. The ALJ considered all of the evidence in the record and weighed its credibility. While Yvonne testified about and reported to her medical providers many disabling symptoms, the ALJ did not credit all of her statements. The ALJ properly considered the consistency and supportability of the medical opinions in the record and explained his evaluation of their persuasiveness, as required by 20 C.F.R. § 404.1520c. The ALJ also properly

considered all of the objective medical evidence in the record, including Yvonne's many normal or near-normal physical exams. The ALJ then concluded that while the evidence showed that Yvonne had mental and physical limitations, those limitations were not as severe as Yvonne asserted. Those facts fully support the RFC.

Yvonne argues that the record supports a more restrictive RFC with a limitation to a sedentary exertional level. ECF No. 10 at 6. She asserts that the ALJ erred in his RFC determination by "improperly discredit[ing] her subjective statements without performing the required analysis and with no acknowledgement, let alone analysis, of the consistency between her testimony and the consultative examiner's opinion." *Id.* at 3. For example, Yvonne asserts that the ALJ failed to consider her testimony that she has problems walking and standing, becomes tired from little activity, suffers from asthma, and is unable lift and carry more than five to ten pounds. *Id.* at 6 (citing Tr. 48, 50). She asserts that her testimony was consistent with the medical evidence and with her self-reported "Functions Report." *Id.* at 6–8 (citing Tr. 270). She cites several medical records that, according to her, "support[] her [subjective] statements" about her conditions and limitations. *Id.* at 8 (citing Tr. 479, 513, 521, 556, 598). Additionally, Yvonne asserts that the ALJ failed to build an "accurate and logical bridge" between his analysis of Yvonne's testimony and the evidence in the record. ECF No. 10 at 9 (citing *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010)). She argues that the ALJ was required to "explicitly compare[]" her subjective statements about her limitations to Dr. Daniel's medical opinion, which she asserts "patently supports her testimony." *Id.*

"Under 20 C.F.R. § 404.15429, in evaluating the claimant's symptoms and pain, the ALJ must consider 'all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, and statements about how the symptoms affect' the claimant." *Britton v. Saul*, 827 F. App'x 426, 431 (5th Cir. 2020). "The ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'" *Id.* (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)) (citation modified). "It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001) (citations omitted). "Subjective complaints of pain must also be corroborated by objective medical evidence." *Id.* (citing *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989)).

The ALJ's decision demonstrates that he considered the entire record, including Yvonne's subjective statements about her impairments However, the ALJ determined that Yvonne's subjective statements about "the intensity, persistence[,] and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record . . . ." Tr. 33. The ALJ then explained why he determined that Yvonne's statements were not entirely consistent with the record. He supported his explanation with citations to the record, including citations to the very medical records that Yvonne references in support of her argument. *Compare* ECF No. 10 at 8 (citing Tr. 479, 513, 521, 556, 598)*, with* Tr. 33 (citing Tr. 498, which is from the same exhibit as Tr. 479, as well as Tr. 513, 521, and 571–620).

Moreover, Yvonne's argument focuses largely on Dr. Daniel's opinion. In doing so, she selectively cites Dr. Daniel's opinion as supportive of her testimony while largely ignoring the rest of the objective medical evidence. The ALJ discussed Dr. Daniel's opinion in detail, and he explained that he did not find Dr. Daniel's opinion persuasive, in part because the ALJ concluded that it was not consistent with the other objective medical evidence in the record. Tr. 34.

The ALJ's conclusions appear to be based on Yvonne's testimony and a thorough reading of the record. Yvonne failed to demonstrate that she is more limited than the ALJ found. She points to no evidence that the ALJ credited that would require further limitations. The record is replete with evidence supporting the RFC. The RFC was determined according to the appropriate legal framework and is supported by substantial evidence. The court finds no error—legal or factual—in the ALJ's RFC assessment.

***E. Step Four***

At step four, the ALJ determines whether the claimant can perform their past work by comparing the RFC with the demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(f); 416.920(f); *see also Perez*, 415 F.3d at 462. To demonstrate that they are disabled, the claimant must show that they lack the RFC to perform: (1) "the actual functional demands and job duties of a particular past relevant job;" or (2) "the functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982).[3] If the claimant can perform their past work,

[3] SSR 82-61 was rescinded and replaced by SSR 24-2p in June 2024. SSR 24-2p, 2024 WL 3291790 (June 6, 2024). However, at the time of Yvonne's hearing in April 2024, the effective Ruling was SSR 82-61, so it applies here. In any event, regardless of which Ruling applies, the result remains the same. *Compare* SSR 82-61, 1982 WL

they are not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant cannot perform their past work, the ALJ proceeds to step five. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ posed a hypothetical to the VE during the hearing that contained all of the limitations in the RFC that the ALJ ultimately found. Tr. 74. The VE testified that a person of the same age, education, past work history, and limitations as Yvonne would be able to perform Yvonne's past work as a housekeeper and as a school custodian. *Id.* The VE explained that while the DOT classifies the occupation of school custodian at the medium exertional level, Yvonne performed that job at the light exertional level. *Id.* Based on the VE's testimony, the ALJ concluded that Yvonne could perform her past work as a housekeeper and as a school custodian, as she actually performed those roles—at the light exertional level. Tr. 36.

Because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and because Yvonne's attorney had the opportunity to cross-examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-four determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross examination). Accordingly, the ALJ's findings at step four are supported by substantial evidence and are not the product of legal error.

31387, at *2 (as quoted), *with* SSR 24-2p, 2024 WL 3291790, at *4 ("We determine whether an individual can perform their [past relevant work] by considering whether the individual retains the RFC to meet the functional demands of any of their [past relevant work] as they actually performed it or as it is generally performed in the national economy.").

Having concluded that Yvonne was capable of performing her past relevant work as it was actually performed, the ALJ did not move onto step five.

***4. Conclusion***

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c).

Accordingly, the Commissioner's Cross Motion for Summary Judgment, ECF No. 12, is **GRANTED**, and the Commissioner's final decision is **AFFIRMED**.

A separate final judgment will be entered.

Signed at Houston, Texas, on September 2, 2026.

Peter Bray
United States Magistrate Judge